IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLISON ISHLER, :
    Plaintiff :
:
vs.                          CIVIL NO. 1:CV-10-2117
:
CHASE HOME FINANCE LLC, :
J.P. MORGAN CHASE, NA
    Defendants :

*M E M O R A N D U M*

I. *Introduction*

      Plaintiff, Allison Ishler, filed a complaint against the defendants, Chase Home Finance LLC (Chase) and JP Morgan Chase, N.A. (JPMC), arising from her unsuccessful attempt to participate in the federal government's Home Affordable Modification Program, known as HAMP. She sets forth three claims. The first two are for fraud under Pennsylvania law, fraud in the written HAMP material sent to Plaintiff and then fraud in subsequent telephone conversations. The third claim is for a violation of the Fair Debt Collection Practices Act, alleging that the defendants violated that statute in their dealings with Plaintiff. Plaintiff invokes federal-question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331 and 1332(a)(1).

      We are considering Defendants' motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, we will grant Defendants' motion.

II.     *Standard of Review*

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, _ U.S. _, _, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).

The court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, and indisputably authentic documents. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006). This includes court filings. *See Churchill v. Star Enterprises*, 183 F.3d 184, 190 n.5 (3d Cir. 1999)(citing *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

In addition, under Fed. R. Civ. P. 9(b), fraud allegations must be pled with particularity. *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004). *See also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347 (3d Cir. 2010). A plaintiff satisfies this requirement by pleading the "date, place or time of the fraud, or through

alternative means of injecting precision and some measure of substantiation into [her] allegations of fraud." *Lum,* 361 F.3d at 224 (citations omitted).

III.     *Background*

Plaintiff alleges as follows. On October 1, 2007, she mortgaged her house to JPMC, which assigned the mortgage to Chase. (Compl. ¶ 9).[1] On May 29, 2009, Chase obtained a default judgment for $206,336.18 against Plaintiff in state-court mortgage-foreclosure proceedings. (Doc. 6-1, state-court docket CM/ECF p. 2). On September 4, 2009, Plaintiff filed a Chapter 13 voluntary petition in bankruptcy. (Doc. 6-1 CM/ECF p. 4). On February 22, 2010, the bankruptcy case was dismissed "for material default." (Doc. 6-1, CM/ECF p. 8).

On March 24, 2010, Plaintiff received from Chase a packet of documents. (Compl. Ex. A). The first of these documents was a one-page letter informing her that she was "approved to enter into a trial period plan under" HAMP. (Doc. 1-3, CM/ECF p. 1). "To accept this offer," Plaintiff had to "make new monthly 'trial period payments' in place of [her] normal monthly mortgage payment." (*Id.*). She was instructed to send Chase three monthly payments of $1,312.55 each, beginning on May 1, 2010, then on June 1, 2010, and July 1, 2010. (*Id.*). The letter also required Plaintiff to send Defendant Chase copies of various financial documents by April 23, 2010, noting that her loan would not be modified if she either: (1) failed to make each trial period payment in the month in which it was due; or (2) failed to submit the required financial documents. (*Id.*). The letter concluded by informing Plaintiff that, if she submitted her documents and made her payments correctly, her mortgage

---

[1]     Plaintiff sometimes treats the defendants as one entity, (see Compl. ¶ 5), but we will treat them separately.

would be permanently modified "if [she] qualified]." (*Id.*). In the meantime, her "existing loan and loan requirements remain[ed] in effect and unchanged during the trial period." (*Id.*). And during the trial period, Chase could post trial period payments to her mortgage account. (*Id.*, CM/ECF p. 5).

Plaintiff submitted the financial information and made all three payments in a timely fashion. (Compl. ¶ 12). On July 1, 2010, the date of the final payment, she called Chase to ask what the next step was to obtain a permanent modification. (*Id.* ¶ 13). A Chase employee responded by asking for certain financial information, including Plaintiff's monthly income, bills, and any other assets or loans Plaintiff had. (*Id.*). The employee said "the next step would be to fill out the 'final loan modification documents,'" which Plaintiff should receive by July 6, 2010. (*Id.*).

On July 2 and 3, 2010, Plaintiff received several phone calls from Chase, which Plaintiff did not answer. (*Id.* ¶ 14). On July 3, 2010, Plaintiff called Chase. She told a Chase employee that she was expecting documents in the mail and asked why she was receiving so many phone calls. (*Id.*). The employee told her "the calls were computer generated" and that the employee would have the calls "pushed back" two weeks so that Plaintiff would have time to submit the documents she was expecting on July 6. (*Id.*).

However, the phone calls never stopped, and Plaintiff did not receive the documents by July 6. (*Id.* ¶ 15). On July 12, 2010, Plaintiff called Chase again. Plaintiff explained her situation to another Chase employee, and the employee told her that the "documents had not been sent for some reason" and that he would send them to her. (*Id.*). The employee also said that he would have the phone calls "pushed back," but Plaintiff continued to receive the calls. (*Id.*).

On August 3, 2010, Plaintiff still had not received the documents. (*Id.* ¶ 16). On that date, her attorney called Chase. A Chase employee, the third one, told him that the documentation Plaintiff had been promised was merely the same checklist of documents that she had already submitted and that the attorney could access it on Chase's website. (*Id.*). The employee said that a sheriff's sale had been scheduled for Plaintiff's property on August 12, and that Plaintiff could prevent the sale by sending in the requested materials. (*Id.*). Counsel was given a phone number to call but this number led to a dead end. (*Id.*). When the attorney called the Sheriff's office about the sale, he was told no sheriff's sale was scheduled for Plaintiff's property, on August 12, or any other date. (*Id.*).

On August 8, 2010, Plaintiff received a letter from Chase stating "that plaintiff had elected not to proceed with the loan modification either because plaintiff notified them that she wished to cancel her request, or that she failed to accept the offer materials." (*Id.* ¶ 17).

On August 20, 2010, Plaintiff called Chase and explained her situation. A Chase employee told Plaintiff that: (1) "her account was closed and that her home was going into foreclosure"; (2) this "was happening because her 'short sale was not accepted'"; and (3) Plaintiff's "'records' indicated that [Plaintiff] had not done a trial loan modification." (*Id.*).

Ten days later, on August 30, 2010, a Chase employee called Plaintiff and, contrary to the representations made to her on August 20, she was told "that there was in fact a record of plaintiff in the trial loan modification program." (*Id.* ¶ 18). However, by September 22, 2010, Plaintiff had "still not received any consistent information as to the status of her loan modification application." (*Id.* ¶ 19).

Plaintiff further alleges:

5

20. The defendant intentionally misled the plaintiff by inducing her to make three trial payments of $1312.55, as part of the initial process of a loan modification, without any intention of actually accepting her into the loan modification program.

   21. The defendant repeatedly lied to plaintiff in . . . inducing her to make the monthly payments and submit paperwork which she has already submitted several times.

   22. The defendant harassed plaintiff with dozens of phone calls on her cell phone while she was at work and home. These calls also occurred during periods of time when plaintiff was explicitly told would not occur. These phone calls were a nuisance and caused frequent interruptions with her work.

   23. Plaintiff has experienced anxiety, depression, embarrassment, and endless frustration, from her phone calls with defendant, as they have left plaintiff with feelings of uncertainty with regard to the future of her home which she has lived in for approximately three years.

(Compl. ¶¶ 2-23).

In Count I of her complaint, Plaintiff makes a claim for fraud based on the representations in the one-page letter and in the "packet of materials" that accompanied it. She alleges:

   26. The statements and representations made in the above referenced packet by defendant were false and, in fact, the purpose of the materials was to induce the plaintiff into making monthly payments for an indefinite amount of time with no intention of permanently putting plaintiff into a loan modification program.

   27. The representations made in the packet were known by defendant to be false when made and were made with intent to deceive and defraud plaintiff and any other prospective borrower of the defendant to make payments with no intention of putting plaintiff into [a] loan modification program.

   28. Plaintiff read the packet and at that time did not know the truth, reasonably believed that the representations were

> true, relied upon them, and was thereby induced . . . to
> make three payments of $1312.55.

(*Id.* ¶¶ 26-28).

In Count II, Plaintiff makes a claim for fraud based on the representations made in the telephone calls. She alleges:

> 30. On numerous occasions, as listed above, plaintiff and plaintiff's attorney had telephone conversations with various employees of defendant.
>
> 31. The statements and representations made by the employees of the defendant were made with the intention of inducing the plaintiff to expend various sums of money and produce various documents for the purpose of wrongfully convincing plaintiff that she was heading on the track to receiving a permanent loan modification.
>
> 32. The statements and representations made by the employees of the defendant were known by defendants to be false and misleading and their purpose was only to defraud plaintiff or others similarly situated to make payments for an indefinite amount of time for no actual purpose other than to falsely give the plaintiff a sense of comfort.
>
> 33. Plaintiff listened to the defendant[']s employees and attempted to comply with all requests and statements made by employees. In reliance [on] defendant's employees['] statements made in telephone conversations, Plaintiff believed she was in the trial period of the loan modification, and planned and acted accordingly.
>
> 34. Plaintiff was humiliated and embarrassed upon being told by defendant's employee that there was no record of her even being in the trial period.
>
> 35. Defendants were recklessly indifferent to their obligation in dealing in good-faith with the plaintiff.

(*Id.* ¶¶ 30-35).

In Count III, Plaintiff alleges a violation of the Fair Debt Collection Practices Act (FDCPA), alleging that the defendants used "false, deceptive and

misleading representations or means," in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e.

As relief, Plaintiff requests: (1) an injunction against the defendants' "collection practices until their practice is reviewed and determined to be equitable"; (2) statutory damages of $1,000, (3) punitive damages, (4) a permanent modification of Plaintiff's loan to a payment of $800 per month on a principal of $120,000; and (5) attorney's fees.

IV. *Discussion*

    A. *Plaintiff Fails to State a Claim Under the FDCPA*

We will deal first with Count III. Plaintiff alleges in that count a violation of the Fair Debt Collection Practices Act (FDCPA), claiming that the defendants used "false, deceptive and misleading representations or means," in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e. In moving to dismiss this claim, Defendants argue that the FDCPA applies only to debt collectors, rather than to creditors seeking to collect their own debts, citing in part *Messett v. Home Consultants, Inc.*, No. 07-2208, 2010 WL 1643606 at *4 (M.D. Pa. Apr. 22, 2010). Defendant Chase explains that, as Plaintiff obtained the loan from defendant JPMC, which then assigned the loan to defendant Chase, both defendants are creditors, rather than debt collectors, and as such, are not subject to the FDCPA. In opposing Defendants' motion, Plaintiff does not address the merits of her FDCPA claim or Defendants' argument. We will therefore dismiss this claim. *See FTC v. Check Investors, Inc.*, 502 F.3d 159, 171-72 (3d Cir. 2007)("Creditors –- as opposed to debt collectors –- generally are not subject to the FDCPA.")(quoted case omitted).

### B. *Plaintiff Fails to State Claims for Fraud*

Plaintiff alleges two counts of fraud against the defendants. In Count I, she alleges fraud based upon the representations in the written HAMP materials. In Count II, she alleges fraud based on the oral representations Chase employees made in the telephone conversations with her and her attorney after she made the third and final trial payment on July 1.

To establish common law fraud under Pennsylvania law, a plaintiff must prove: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 225 n.13 (3d Cir. 2008)(*quoting Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. 2006)).

Defendants argue that the fraud claim in Count I based on the written HAMP material fails because Plaintiff's allegations of fraud in that count federal pleading requirements as being conclusory and without sufficient factual support. They point to the allegations in paragraphs 26 and 27 of count I. In paragraph 26, Plaintiff alleges that "the statements and representations made" in the HAMP material "were false and, in fact," made "to induce the plaintiff into making monthly payments for an indefinite amount of time with no intention of permanently putting plaintiff into a loan modification program." In paragraph 27, she alleges that the "representations . . . were known by defendant to be false when made and were made with intent to deceive and defraud plaintiff . . . to make payments with no intention of putting plaintiff into [a] loan modification program."

Defendants go further and contend that the actual written material could not in any event have misled Plaintiff into falsely believing that she would be

9

put in the loan modification program. The material made no guarantees and said her loan would be modified only if she qualified for the program. *See Shurtliff v. Wells Fargo Bank, N.A.*, No. 10-165, 2010 WL 4609307, at *4 (D. Utah Nov. 5, 2010)(no viable fraud claim when HAMP documents showed that modification was contingent on the defendant bank's approval, and the bank only did what it was permitted to do when it determined the plaintiff did not qualify for a loan modification).

Defendants next argue that the fraud claim in Count II based on the oral statements Chase employees made during the telephone conversations fails because she cannot show reasonable reliance on these statements. Reasonable reliance is absent because these statements were made after Plaintiff made the third and final trial payment so Plaintiff could not have reasonably relied on them in deciding to make the trial payments, the actions she said were induced by the representations.

Finally, in regard to both fraud claims, Defendants present two reasons why Plaintiff has failed to allege any damages resulting from the alleged fraudulent conduct. First, Plaintiff alleges she was induced to make her three trial payments in reliance on the representations, but Plaintiff was obligated to make those payments anyway as part of her still existing mortgage obligation, even under HAMP. *See Adams v. U.S. Bank*, No. 10-10567, 2010 WL 2670702, at *4 (E.D. Mich. July 1, 2010)(fraud claim based on the plaintiffs' unsuccessful HAMP application fails in part when the plaintiff could show no injury since she was already obligated to make the mortgage payments); *Singh v. Wells Fargo Bank*, No. 10-1659, 2011 WL 66167, at *8 (E.D. Cal. Jan. 7, 2011)(fraud claim based on the plaintiffs' unsuccessful HAMP application fails when the plaintiffs did not state

10

how their reliance resulted in damages).  Second, Plaintiff does not allege she qualified for the program, even if Chase should have allowed her a permanent modification of her mortgage.  *See Adams*, *supra*, 2010 WL 2670702, at *4 (fraud claim based on the plaintiff's unsuccessful HAMP application fails in part when the plaintiff does not allege she would have qualified for a loan modification); *Sankey v. Aurora Loan Services, LLC.*, No. 10-11815, 2010 WL 4450404, at *2 (D. Mass. Nov. 4, 2010)(fraud claim based on the plaintiff's unsuccessful HAMP application fails when she does not allege she would have qualified for the program).

We agree with this analysis and will dismiss the complaint for the reasons set forth by the defendants.  We have considered Plaintiff's opposition arguments but reject them.  In pertinent part, Plaintiff contends the no-damages argument lacks merit because she is contending that a contract was made: Plaintiff's consideration was to make trial payments and in return Chase was to process her application.  Next, unlike in the cases Defendants cite, Plaintiff's fraud claim is that she was falsely told she would be considered for a loan modification when Chase never considered her application.  Plaintiff also argues she is entitled to discovery to determine if she was in fact considered for a modification under HAMP.

Plaintiff's contract argument lacks merit because Plaintiff made no contract claim in her complaint.  Her second argument fails because it does not address the injury argument fatal to her fraud claims.  Plaintiff's third argument fails because a plaintiff is not entitled to       discovery to determine if she has a cause of action.  *See Ranke v. Sanofi-Synthelabo Inc.,* 436 F.3d 197, 204 (3d Cir. 2006).

Having decided that the complaint fails to state a claim, we must decide whether we should allow amendment.  *Chemtech Int'l, Inc. v. Chem.*

11

*Injection Technologies, Inc.*, 170 F. App'x 805, 811 (3d Cir. 2006)(nonprecedential). Generally, amendment should be allowed, unless it would be futile. *Id.* We believe it would be futile here, based on Plaintiff's failure to allege that she would have qualified for a loan modification. Defendants pointed this out in their brief, and Plaintiff did not respond to it. In the absence of an allegation that she would have qualified, there does not appear to be any cause of action Plaintiff could make that would satisfy a showing of injury.

        We will issue an appropriate order.

                                      <u>/s/William W. Caldwell</u>
                                      William W. Caldwell
                                      United States District Judge

Date: February 23, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLISON ISHLER, :

    Plaintiff :

:
    vs.                       CIVIL NO. 1:CV-10-2117
:

CHASE HOME FINANCE LLC, :
J.P. MORGAN CHASE, NA
    Defendants :

*O R D E R*

    AND NOW, this 23rd day of February, 2011, it si ordered that:

    1.  Defendant's motion (doc. 4) to dismiss Plaintiff's complaint is hereby granted.

    2.  The Clerk of Court shall close this file.


                                   /s/William W. Caldwell
                                  William W. Caldwell
                                  United States District Judge